## Asociación de Señoras Damas del Santo Asilo de la Villa de Ponce *v.* Diana et al.

Apelación procedente de la Corte de Distrito de Ponce.

No. 798.—Resuelto en junio 29, 1912.

Acción Reivindicatoria—Cumplimiento de un Testamento—Indebida Acumulación de Partes Demandadas—Indebida Acumulación de Acciones.—En el caso de autos el tribunal resolvió que de acuerdo con el artículo 104 del Código de Enjuiciamiento Civil no existía indebida acumulación de partes demandadas ni de acciones, puesto que siendo la base de este litigio el cumplimiento de un testamento, en un sólo pleito y reuniendo a todos los interesados, es que deben resolverse definitiva y finalmente todas las cuestiones suscitadas.

Id.—Asociación Benéfica Constituída Bajo la Soberanía Española—Capacidad para Demandar—Evidencia—Legislación Ultramarina por Rodríguez San Pedro.—Se resolvió en el caso de autos que la corte inferior cometió error al no admitir como prueba para su mayor ilustración un tomo de la obra titulada ''Legislación Ultramarina concordada y anotada por Don Joa-

quín Rodríguez San Pedro," publicada bajo la autoridad del Ministro de Ultramar, constando en el tomo 2, página 201, de dicha obra, que por real orden de noviembre 11, 1863, fué aprobado el reglamento de la asociación demandante.

Id.—Asociaciones Benéficas Fundadas Bajo la Soberanía Española—Capacidad para Adquirir Bienes por Testamento.—Examinada la prueba presentada en este caso es necesario concluir que la Asociación demandante se organizó y comenzó a funcionar de acuerdo con la ley desde 1863 y estaba capacitada para adquirir bienes por testamento a la muerte de Silva ocurrida en 1873.

Id.—Capacidad de la Asociación Demandante para Demandar.—Habiendo sido registrada la asociación demandante de acuerdo con la Ley de Asociaciones de 1888, y constando este hecho en autos en virtud de una certificación expedida por el Secretario Auxiliar de Puerto Rico y habiendo continuado sus funciones sin interrupción, dicha asociación demandante, después del cambio de soberanía, y reconocida su existencia por varias de las partes relacionadas con este pleito, es indudable que dicha asociación tiene capacidad para demandar y reclamar la entrega de los bienes que constituyen la herencia objeto de este pleito.

Testamento—Interpretación—Cumplimiento de la Voluntad del Testador.—Habiendo demostrado la asociación demandante su capacidad para adquirir y demandar, y habiendo probado las alegaciones de la demanda, se decidió que el caso debía regirse por los principios establecidos en la sentencia dictada por esta Corte al resolver la primera apelación interpuesta en este pleito (*Asociación de Señoras Damas., etc., v. Diana et al.,* 16 D. P. R., 381), y en su virtud, que en cumplimiento de la última solicitud del testador, debían entregarse los bienes a que se refiere el testamento a la asociación demandante para que los conserve en lo posible bajo buena administración e invierta sus productos líquidos en el socorro de los pobres enfermos asilados.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José Tous Soto.*

Abogados de los apelados: *Sres. C. López de Tord, Nemesio R. Canales y Francisco Jiménez.*

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

La Asociación de Señoras Damas del Santo Asilo de la Villa de Ponce, interpuso demanda, ejercitando la acción reivindicatoria, contra Josefa Diana Martínez y otros, en la Corte de Distrito de Ponce, en 28 de julio de 1909. Alegada la excepción de que la demanda no aducía hechos suficientes para determinar una causa de acción y dictada sentencia declarándola con lugar, la parte demandante apeló para ante esta Corte Suprema, y esta corte, en 24 de mayo

de 1910, revocó la sentencia apelada, por entender que bajo cualquier aspecto que se consideraran las cuestiones envueltas en el caso, la demanda aducía hechos suficientes para establecer la causa de acción ejercitada. (*Asociación de Señoras Damas etc.* v. *Diana et al.,* 16 D. P. R., 381 y 392.)

Devuelto el caso a la corte inferior, la demandante, en 23 de septiembre de 1910, con permiso de la corte, enmendó su demanda que quedó redactada de la manera siguiente:

1°. Que la demandante es una Asociación Civil, con fines benéficos, consistentes en la asistencia hospitalaria de enfermos pobres, debidamente constituída e inscrita en el registro de asociaciones, de acuerdo con la Ley de Asociaciones de fecha 13 de junio de 1888 y con personalidad jurídica para demandar y ser demandada; y que dicha demandante es además una fundación benéfica, cuyos estatutos o reglamentos fueron aprobados por R. O. de la Reina de España, de fecha 11 de noviembre de 1863.

2°. En fecha 17 de septiembre de 1873, Don Juan Bautista Silva, siendo soltero y careciendo de herederos forzosos, otorgó testamento ante el Notario Don Francisco Parra y Duperón, en el cual dispuso entre otros extremos, lo siguiente:

"Itt. Puesto que carezco de herederos forzosos y lo que poseo no quiero se desmembre por que me cuesta muchos años de trabajo y economías, es mi voluntad deliberada, que extraído que sea el legado antedicho para María Juliana y Ramona Ysabel, hijas de la liberta Carmen, y dos vacas paridas una para cada cual de ellas, así como lo necesario para cubrir los gastos de mi enfermedad y entierro, todos mis demás bienes sobrantes que los constituyen terrenos, animales y deudas a favor que llevo mencionados, tome posesión y entrega de ellos mi buen amigo Don Juan Apolinario Laboy, vecino de Ponce, que merece toda mi confianza hace tiempo, me sirve y me acompaña en mis enfermedades desinteresadamente, a quien nombro e instituyo por mi único heredero voluntario de dichos bienes *durante* su vida, con las *condiciones precisas* que le impongo a continuación: Primera, que el líquido usufructo de dichos bienes, después de satisfechas las contribuciones municipales y demás que por derecho se le impongan, se divida en dos partes iguales, una para dicho heredero Laboy en recompensa justa de su

buena administración y celo por dichos intereses y otra para atender a los pobres enfermos del Santo Asilo de Caridad de las Damas de Ponce, cuya liquidación de productos y entrega de esta parte se hará al fin de cada año por el mismo heredero administrador sin otra intervención extraña de ningún género, como cometido de pura conciencia; y porque el producto de propiedades como las que dejo, dependan más o menos de que sean o no favorables las estaciones del año y que no falten a tiempo las lluvias en la comarca. Segunda, que siendo mi especial objeto el que no se desmembren ni dividan mis bienes que tantas privaciones y trabajos me cuestan, a la muerte de Laboy pasen con el debido inventario y razón de todos ellos al poder y posesión de la persona que merezca la confianza del mismo Don Juan Apolinario Laboy, con iguales facultades y para el propio objeto que llevo aquí consignado, a cuyo fin en el momento en que por mi muerte entre éste en la propiedad y posesión de mis citados bienes *deberá precisamente otorgar en forma su final disposición testamentaria* en que determine la persona que le ha de suceder en dicho cometido, cuya facultad de sustituir, que de acuerdo con tal motivo a Laboy se irá trasmitiendo de éste, como dejo dicho, en persona de su confianza, de aquel en la que la merezca la suya y así sucesivamente, siempre por *testamento* en forma, u otro acto fehaciente que otorgará sucesivamente, en el momento en que entren a desempeñar su cargo de *heredero sustituto;* y Tercera, que si por no llenarse este requisito de la sustitución en oportunidad como lo recomiendo, si por pretenciones de algún pariente mio o extraño, o por cualquier otro concepto, motivo o reclamación se quisiese hacer o suponer vacante o intestada la citada herencia, o sea los bienes que la constituyen, quiero y es mi voluntad que en este último caso, que a la muerte del referido Laboy, mi primer heredero, pasen dichos bienes al citado Asilo de Damas de Ponce, mi heredero sustituto que le nombro, recomendando en este caso muy especialmente a esta Asociación, el que se conserven en lo posible bajo buena administración los predichos bienes y solamente sus productos líquidos sean los que se inviertan en el socorro de los pobres enfermos del establecimiento indicado.''

3°. Que el Santo Asilo de Damas de Ponce a que se refiere el testamento antes mencionado es la misma Asociación demandante, o sea la Asociación de Señoras Damas de Ponce, conocida y denominada generalmente con la denominación que aparece en dicho testamento.

4°. Que entre otros bienes relictos por el testador Don

Juan Bautista Silva, se encuentran los siguientes: Se describen detalladamente: (A) Una finca rústica de 400 cuerdas; (B) otra finca rústica de 126 cuerdas; (C) otra de 50 cuerdas; (E) otra de 2 cuerdas; (G) una parcela de cuerda y media; (H) un crédito hipotecario por $600 constituído sobre una casa y solar en la calle Unión, de Ponce.

5°. Que Don Juan Bautista Silva, falleció en diez y siete de diciembre de 1873, sin haber revocado ni modificado el testamento antes referido, ni dejado herederos forzosos; y desde esta fecha su albacea y heredero voluntario condicional Don Juan Apolinario Laboy, entró en posesión de los bienes de la herencia, dando a las rentas de los mismos la aplicación dispuesta por el testador.

6°. Que en 30 de septiembre de 1875 Don Juan Apolinario Laboy compareció ante el notario de Ponce Don Francisco Parra Duperón y ante éste otorgó una escritura de sustitución de herencia (que no reune los requisitos y formalidades de un testamento) en la que después de insertarse la cláusula del testamento de Don Juan Bautista Silva, transcrita en esta demanda, manifestó el compareciente:

"Que practicado ya el inventario de los bienes de Silva y puesto en posesión de éstos, viene a cumplir por el presente acto notarial la condición citada del testamento, nombrando como elige y nombra por heredero sustituto del mencionado Silva a la legítima esposa del que habla Doña Dominga Fernández de Laboy, de este vecindario y por *muerte u otra imposibilidad legal de ésta,* a su hijo de crianza, Don José Laboy, de quince años de edad, que vive en su compañía, eligiéndole para este caso, si aun fuere menor de edad, y durante la minoría a Don Juan José Vázquez de curador *ad bona,* vecino, propietario de este partido y persona de su confianza a quien releva de toda fianza y garantía, para el desempeño de este cargo, confiriendo a dicho heredero sustituto las mismas amplias facultades que le concediera Silva al otorgante por el testamento referido y cláusula inserta."

7°. Que Don Juan Apolinario Laboy falleció en 7 de mayo de 1888 sin testamento, antes que su consorte Doña Dominga Fernández Verdez, la cual al fallecimiento de su consorte, y sin otro título que el documento referido en el hecho ante-

rior, tomó posesión de los bienes de la herencia de Don Juan Bautista Silva y los administró hasta su muerte, entregando anualmente a la Asociación demandante la mitad de los productos de dichos bienes.

8°. Que Doña Dominga Fernández Verdez, hizo testamento ante Notario Don Francisco Parra, en 24 de abril de 1869, en cuya fecha no había fallecido Don Juan Apolinario Laboy, ni Don Juan Bautista Silva, ni otorgado éste su testamento, ni por tanto ella había tomado posesión de los bienes relictos por el expresado Don Juan Bautista Silva; y que en dicho testamento de la Sra. Verdez, ni en ningún otro documento, hace ésta referencia a la administración y manejo de los expresados bienes, ni designación de persona que había de administrarlos a su fallecimiento.

9°. Que Doña Dominga Fernández Verdez en su referido testamento instituyó heredero universal a Don José Laboy Fernández, y que éste, sin título alguno tomó posesión ilegalmente de los bienes relictos por Don Juan Bautista Silva, al fallecimiento de Doña Dominga Fernández Verdez, ocurrido hacia el 15 de enero de 1891, pretendiendo tener derecho a ello bajo la cláusula del testamento de Don Juan Apolinario Laboy, transcrito en el hecho 7°.

10°. Que al fallecimiento de Don José Laboy Fernández, tomó posesión ilegalmente de los bienes relictos por Don Juan Bautista Silva, la consorte de dicho Laboy, Doña Josefa Diana Martínez, alegando tener derecho a ello por haber sido nombrada administradora de los bienes relictos por Don Juan Bautista Silva, por su consorte, José Laboy, y que esta demandada se encuentra actualmente en posesión de todos dichos bienes con excepción de las parcelas de terreno que más adelante se describen.

11°. Que Doña Josefa Diana Martínez mediante una información posesoria tramitada y aprobada ante la extinguida Corte de Distrito de Ponce, en la que alegó falsamente que poseía a título de dueña las fincas descritas con las letras (A) y (B), ha inscrito dicho dichos inmuebles a su propio

nombre en el registro de la propiedad, sin mencionar siquiera en dicho expediente a la sociedad demandante; y posteriormente intentó convertir en inscripción de dominio su inscripción posesoria, lo que no logró por haberse opuesto dicha demandante. La posesión del inmueble (A) se inscribió a nombre de Doña Josefa Diana Martínez exclusivamente *sin perjuicio de tercero de mejor derecho a la propiedad de la misma* en el Registro de la Propiedad de Ponce, al folio 187, del libro 8 de Santa Isabel, finca 281, inscripción 1ª.; y la finca (B) también sin perjuicio de tercero, al folio 144 del libro 8 de Santa Isabel, finca 198, inscripción 1ª.

12°. Este hecho se refiere al arrendamiento de la finca letra (B) contratado por la demandada Josefa Diana Martínez por varios años, (quince finalmente), sin el consentimiento de la demandante. Dicho arrendamiento fué cedido al demandado Carlos Cabrera.

13°. Que José Laboy, diciéndose dueño de un predio de terreno de 13 cuerdas, 75 céntimos, parte integrante de la finca (B) perteneciente a la herencia de Don Juan Bautista Silva, cuyo hecho constaba a dicho Laboy, promovió un expediente posesorio a su favor de dicho predio, que fué aprobado sin perjuicio de tercero de mejor derecho a la propiedad, en 6 de mayo de 1892, e inscrito a su nombre en el Registro de la Propiedad de Ponce, al folio 140, del tomo 4 de Santa Isabel, finca 151, con la descripción siguiente: (Se describe).

14°. Que este predio fué vendido por Laboy a Rufino Tricoche, inscribiéndose esta venta en el registro de la propiedad; y éste vendió una cuerda a Julio Mercado y arrendó al mismo las 12.33 restantes, por un término de seis años que vencerán el 2 de marzo de 1910; y que dicho Tricoche y Mercado, poseen en la actualidad los referidos predios, cuya propiedad pertenece a la demandante.

15°. Que Don Luis Burgos y Martínez obtuvo del juzgado municipal de Santa Isabel en 9 de febrero de 1890, que decla-

rara justificado a su favor la posesión de un predio de terreno que se describe así: (Se describe una finca de 50 cuerdas). Que el promovente manifestó haber adquirido 6 cuerdas, de las 50, por compra a Apolinario Laboy, sin expresar la fecha, sin mediar título escrito; y que dichas 6 cuerdas en realidad eran y son 6.91 y constituyen parte integrante de la finca letra (A) que constituye parte del caudal relicto por Don Juan Bautista Silva y pertenece en pleno dominio actualmente a la actora.

16°. Que esta porción de 6.91 cuerdas, como parte integrante de las 50 antes descritas, se encuentran hoy detentadas por la Santa Isabel Florida Sugar Co., una corporación constituída e incorporada de acuerdo con las leyes de Puerto Rico, juntamente con otras 2.47 cuerdas más, parte integrante de la finca (A) que han sido incluídas sin título alguno por dicha Santa Isabel Florida Sugar Co. y sus antecesores en título de la finca de 50 cuerdas; y cuya posesión de 2.47 cuerdas en unión de las 6.91 referidas, totalizan 9.38 cuerdas que son las marcadas con la letra (?) en el plano (exhibit ?) que se acompaña. (sic.) El expediente posesorio de dicha finca de 50 cuerdas, originariamente se inscribió sin perjuicio de tercero de mejor derecho a la propiedad, en el Registro de la Propiedad de Ponce al folio 15 del libro 4 de Santa Isabel, finca 140.

17°. Que la descripción de las 6.91 cuerdas referidas son: (Se describen.)

Y la descripción de las 2.47 cuerdas es como sigue: (Se describen.)

La descripción de la porción de 9.38 cuerdas integradas por las dos parcelas antes descritas es como sigue: (Se describe.)

18°. Que en mayo de 1904, Don Cleobulino Colón Zayas, formalizó un expediente de 3 cuerdas de terreno, parte integrante de la finca letra (A), alegando haberlas comprado

privadamente a José Laboy, a quien le constaba que dichas 3 cuerdas formaban parte de la finca letra (A) perteneciente al caudal relicto por Don Juan Bautista Silva bajo la descripción siguiente: (Se describe.)  Cuya finca mediante expediente fué inscrita en el registro de la propiedad, bajo el número 294, tomo 8 de Santa Isabel, hacia el folio 160 del mismo, actualmente se encuentra en posesión de Don Julio Ribas, por haberla éste comprado a Don Vicente Usera, y éste a su vez de Don Cleobulino Colón, siendo dicha propiedad exclusiva de la actora.

19°. Que Juana Campos conocida también por Juana Yordán, detenta sin título alguno una porción de terreno de 3 cuerdas, parte integrante de la finca (A), siendo la descripción de dicha parcela de 3 cuerdas como sigue: (Se describe.)

20°. Que Baldomero Rodríguez detenta una porción de terrenos sin título alguno, parte integrante de la finca letra (A), siendo la descripción de dicho trozo de terreno: (Se describe.)

21°. Se refieren detalladamente los hechos relativos al arrendamiento de la finca (C) al demandado Torres Grau, por término de diez años y medio, sin la anuencia de la demandante.

22°. Trata este hecho del arrendamiento de las fincas (D) y (E), al demandado Carlos Santiago, por término de seis años, prorrogables tres más, y canon de noventa pesos anuales, confesando el arrendador José Laboy haber recibido el pago de todos los cánones, sin que jamás se pagara su parte a la demandante.

23°. Trata del arrendamiento de la finca (G) hecho por José Laboy sin consentimiento de la parte actora, a Gustavo Cabrera y herederos de Enrique Cabrera.

24°. Se nombran en este hecho de la demanda a las personas que sucedieron a Gustavo Cabrera, con motivo de su fallecimiento, quienes, en unión de los herederos de Enrique Cabrera, son los actuales poseedores de la finca (G).

25°. Que por escritura pública, de fecha 28 de agosto de 1888, Don José Laboy hipotecó a Doña Dominga Fernández Verdez, para responder de la suma de 1850 pesos moneda entonces corriente, que confesó recibido de la misma y se comprometió a devolverle el día 28 de agosto de 1889, con el interés del uno por 100 mensual, la finca siguiente: (Se describe bajo la letra (D) un predio de 6½ cuerdas, en el cual hay enclavada una casa). Que por otra escritura de fecha 16 de octubre de 1888, Doña Dominga Fernández Verdez, declaró que la suma prestada a Laboy, pertenecía a la herencia de Don Juan Bautista Silva que ella administraba, correspondiendo por tanto a dicha herencia la referida hipoteca y no a ella; y finalmente por otra escritura de fecha 3 de mayo de 1890, Don José Laboy adjudicó y dió en pago de la suma que garantizaba dicha hipoteca a Doña Dominga Fernández Verdez, la finca hipotecada que se ha descrito.

26°. Que Don Carlos Cabrera y Paz ha poseído la finca letra (B) desde primero de agosto de 1904, y la posee actualmente, percibiendo los frutos y rentas de la misma, y que el valor de tales rentas y frutos, es el de 15 dollars por cuerda al año, como mínimum; y de igual modo Don Tomás Torres Grau posee actualmente la finca letra (G), y la poseía desde igual fecha, percibiendo los frutos y rentas de la misma, cuyo valor mínimum asciende a 10 dollars por cuerda al año.

La demandante solicitó en su súplica que se declare que los bienes inmuebles descritos, procedentes de la heréncia de Silva, son de su propiedad; que se le ponga en posesión de ellos; que se declare la nulidad de los expedientes posesorios a que se ha hecho referencia y las inscripciones de los mismos en el registro, y otros pronunciamientos, algunos de ellos innecesarios por haber luego la misma demandante desistido de su acción en cuanto a varios de los demandados.

La demandada Josefa Diana Martínez, excepcionó la demanda enmendada alegando: 1°. Que existe indebida acumulación de partes demandadas; 2°. Que varias acciones han sido acumuladas indebidamente, y 3°. Falta de hechos para deter-

minar una causa de acción; y la contestó, además, en la siguiente forma:

### PRIMERA DEFENSA.

1°. Negamos la alegación primera de la demanda enmendada y especialmente que la demandante tenga personalidad jurídica para demandar y ser demandada y que la tuviera para adquirir bienes a la muerte de Don Juan Bautista Silva, o sea, el 17 de diciembre de 1873.

2°. Negamos también la alegación 3ª. de dicha demanda.

3°. Negamos el hecho 9°. de la demanda y en su lugar alegamos: que al fallecimiento de Doña Dominga Fernández Verdez, su heredero José Laboy Fernández tomó posesión de todos los bienes que poseía dicha señora en su carácter de heredero testamentario de la misma; y entre otros, tomó posesión de los bienes que constituyeron la herencia de Silva, toda vez que a título de dueño fueron antes poseídas hasta su muerte por su causante la referida Señora Fernández Verdez. Y alegamos que al posesionarse de tales bienes, José Laboy Fernández obró de buena fe, en la creencia de que le pertenecían como dueño en su carácter de heredero antes mencionado, y con conocimiento y asentimiento de "El Santo Asilo de Damas de Ponce."

4°. Negamos el hecho décimo de la demanda enmendada en cuanto alega que la demandada Doña Josefa Diana Martínez tomó posesión ilegalmente de los bienes relictos por Silva; y alegamos en su lugar que al tomar posesión de los referidos bienes dicha Señora obró de buena fe, con justo y legal título, o sea en virtud del testamento que otorgó su esposo José Laboy Fernández, que la nombró su heredera sustituta.

5°. Negamos las alegaciones del párrafo once de la demanda enmendada en la forma en que está redactada. Y alegamos que es cierto que la demandada Señora Diana Martínez practicó la información posesoria conforme se alega en la alegación 11 de la demanda y que luego trató de convertir

dicha posesión en dominio, promoviendo tales expedientes como dueña legal de los bienes que constituyeron la herencia de Silva y respetando siempre los derechos de la mitad del usufructo, para atender a los pobres enfermos del Santo Asilo de Caridad de las Damas de Ponce.

6°. Negamos la alegación del párrafo 12 de la demanda en cuanto dice que los arrendamientos se han hecho sin consentimiento ni conocimiento de la demandante, en grave perjuicio y detrimento de sus intereses y por un canon ridículo; y alegamos que todos los contratos de arriendo y subarriendo que se mencionan en el hecho 12 de la demanda, se han llevado a cabo teniendo conocimiento de los mismos el Santo Asilo de Damas de Ponce, sin oposición alguna por parte de dicho Asilo, que los ha ratificado en distintas ocasiones. Y que el canon del arrendamiento en la fecha en que fueron hechos, era el justo y corriente valor de los terrenos arrendados.

7°. Que el arrendamiento a que se refiere la alegación 21 de la demanda se hizo con el asentimiento del Santo Asilo de Damas que lo ha ratificado en distintas ocasiones y alegamos, que el canon de arrendamiento que se convino, representaba el justo valor del terreno arrendado en la fecha en que se hizo el arrendamiento.

8°. Que los contratos a que se refieren las alegaciones 22 y 23 de la demanda, se llevaron a cabo con conocimiento del Santo Asilo de Damas de Ponce, sin oposición alguna por parte de dicho Asilo de Damas que los ha ratificado en distintas ocasiones; y alegamos que el canon del arrendamiento en la fecha en que fué hecho era el justo y corriente valor de los terrenos arrendados.

### SEGUNDA DEFENSA.

Alegamos especialmente que la demandante no tiene capacidad para demandar ni ser demandada; y que la demandante al fallecimiento de Don Juan Bautista Silva no tenía capacidad para adquirir bienes de clase alguna.

### TERCERA DEFENSA.

Que la demandada Doña Josefa Diana Martínez y antes que ella sus causantes y predecesores en título, han venido poseyendo las fincas que se reclaman con justo título y buena fe y durante un término de más de un año, seis años, diez años y veinte años; y en su consecuencia alegamos que habiéndose ejercitado tal posesión a título y en concepto de dueño, existe a favor de dicha demandada la prescripción adquisitiva del dominio estatuída en la Orden Judicial de 4 de abril de 1899, relacionada esta ley con el artículo 1840 del vigente Código Civil de Puerto Rico y artículo 1858 del mismo código y 1957 del Código Civil anterior, y ley 3, título 8, libro 11 de la Novísima Recopilación Española. Y alegamos que dicho término de uno, seis, diez y viente años no ha sido interrumpido en ocasión alguna por interposición de reclamación judicial ni de ningún otro modo.

### CUARTA DEFENSA.

Que la demandada Doña Josefa Diana Martínez y antes que ella sus causantes y predecesores en título, han venido poseyendo en concepto de dueños las fincas que se reclaman por un término de más de 30 años, sin que dicho término haya sido interrumpido por modo alguno. Y sometemos a la consideración de esa honorable corte, que existe a favor de dicha demandada la prescripción extraordinaria para adquirir el dominio, regulada en la ley 5ª. del título 8 del libro 11 de la Novísima Recopilación Española, del artículo 1959 del antiguo Código Civil Español y artículo 1840 del vigente Código Civil de Puerto Rico.

### QUINTA DEFENSA.

Que la demandante ha dejado transcurrir un término de más de 30 años sin ejercitar la presente acción, y por tanto, sometemos a la consideración de la honorable corte, que la acción se ha extinguido por prescripción, a tenor de lo estatuído en la ley 5ª., título 8, libro 11, de la Novísima Recopi-

lación Española, y del artículo 1939 del Código Civil Español y del artículo 1840 del Código Civil de Puerto Rico.

### SEXTA DEFENSA.

Que el Santo Asilo de Damas de Ponce ha reconocido en. todo tiempo que la demandada Doña Josefa Diana Martínez y antes que ella sus causantes y predecesores en título, los mencionados Don Juan Apolinario Laboy, su esposa Doña Dominga Fernández Verdez y Don José Laboy Fernández, eran dueños de las fincas que se reclaman en el presente pleito, consintiendo que dichas personas poseyeran aquellas. fincas, permitiéndolas celebrar contratos de arrendamiento y ejercitar toda clase de derechos dominicales; y por ello sometemos a la consideración de la honorable corte, que la demandante no puede ir contra sus propios actos y está imposibilitada para ejercitar la presente acción.

El demandado Tomás Torres Grau contestó la demanda enmendada negando general y específicamente todas y cada una de sus alegaciones y alegando en su favor varias defensas, entre ellas la de que es tercero de buena fe y la de que la demandante no tuvo capacidad para adquirir la herencia de Silva al tiempo de la muerte del testador, ni la tiene ahora para demandarla en juicio. Este demandado, luego, en el acto de la vista, presentó un documento creditivo de que había entregado desde febrero 17, 1908, a la demandada Josefa. Diana Martínez la finca (c) que le tenía arrendada.

La demandante presentó la siguiente impugnación de la alegación de prescripción:

Que impugna de manera expresa la alegación de prescripción adquisitiva contenida en la tercera defensa de la contestación a la demanda enmendada, así como la alegación de prescripción adquisitiva extraordinaria contenida en la cuarta defensa de dicha contestación, por no haber poseído la demandada y sus predecesores en título, en concepto de dueños, sino de meros administradores, existiendo además mala fe en la posesión de José Laboy y Josefa Diana Martí-

nez. Que impugna de igual modo la alegación de prescripción extintiva contenida en la 5ª. defensa, por no haber transcurrido treinta años desde que la demandante *pudo* ejercitar esta acción. Impugnamos la alegación de la demandada Josefa Diana Martínez.

Los demandados Juana Campos o Yordán y Julio Ribas presentaron excepciones previas y habiendo sido desestimadas y habiendo dejado de contestar la demanda en el término que se le concediera al efecto, se anotó su rebeldía.

La corporación demandada Santa Isabel Sugar Co. fué emplazada debidamente y como no compareciera se anotó su rebeldía.

La parte demandante en 20 de septiembre de 1910, presentó una moción desistiendo de su acción en cuanto a los demandados Julio Mercado, Rufino Tricoche, Baldomero Martínez, Herederos de Gustavo Cabrera y Enrique Cabrera, y también en cuanto a Carlos Santiago en lo que atañe a las fincas (D) y (F). Para mayor claridad debe advertirse que del hecho 4º. de la demanda primitiva se eliminaron por la enmendada las fincas (D) y (F), incluyéndose en el hecho 25 una finca marcada con la letra (D) dentro de la cual está enclavada una casa que es sin duda la misma antes designada con la letra (F).

En 29 de septiembre de 1910, la demandante presentó un escrito consignando que había transado todas sus diferencias y reclamaciones que con motivo de este pleito tenía contra el demandado Carlos Santiago y que en su virtud desistía absolutamente de la continuación de esta acción en contra del demandado Santiago. El dicho demandado Carlos Santiago en escrito de igual fecha anunció e informó al tribunal que tenía a su disposición y ofrecía entregar las fincas de 6½ u 8 cuerdas más o menos y de 2¼ cuerdas, sitas ambas en el barrio de Machuelo Abajo del término municipal de Ponce, a que se refiere la demanda.

Y por último la parte demandante presentó un escrito solicitando el sobreseimiento del caso en lo que atañe al

demandado Carlos Cabrera, sin especial condena de costas, por haber llegado con él a una transacción que se hizo constar en escritura pública.

En su consecuencia, las partes demandadas que en un principio lo fueron: 1. Josefa Diana Martínez; 2. Carlos Cabrera; 3. Tomás Torres Grau; 4. Carlos Santiago; 5. Rufino Tricoche; 6. Julio Mercado; 7. Julio Ribas; 8. Santa Isabel Sugar Co. o Central Cortada; 9. Juana Campos o Jordán; 10. Baldomero Rodríguez Martínez; 11. Herederos de Gustavo Cabrera; y 12. Herederos de Enrique Cabrera, quedaron reducidas a: 1. Josefa Diana Martínez, que excepcionó y contestó la demanda; 2. Tomás Torres Grau, que contestó la demanda; 3. Juana Campos o Yordán; y 4. Julio Ribas, quienes excepcionaron la demanda sin gestionar nada más en el litigio, y por último; 5. Santa Isabel Sugar Co., declarada en rebeldía.

Celebrada la vista, en la que las partes comparecientes demandante y demandadas practicaron sus pruebas, la corte de distrito dictó sentencia en 29 de abril de 1911, declarando sin lugar la demanda y condenando a la parte demandante al pago de las costas. Para fundar esa sentencia, el juez de distrito emitió una opinión en la que hizo constar, que en cuanto a la alegación de nulidad de la cláusula del testamento de Don Juan Bautista Silva en que se funda la demanda, por cuanto tiende a crear un fideicomiso perpetuo con prohibición de enajenar, aceptaba la interpretación que a dicha cláusula diera el Tribunal Supremo de Justicia en su sentencia de 24 de mayo, 1910.

También hizo constar el juez sentenciador que en su opinión la acción entablada por el demandante no había prescrito. "Opina la corte que dentro de la teoría de derecho que establece la demanda, la acción nació al momento de la muerte de Apolinario Laboy, ocurrida en 7 de mayo de 1888. Y evidentemente, desde esta fecha hasta la interposición de la demanda no ha transcurrido el plazo fijado por la ley. Respecto a la prescripción adquisitiva, es opinión de la cor-

te que la posesión de los bienes por parte de la demandada.
Doña Josefa Diana Martínez, no ha sido una posesión adversa
y contraria a las pretensiones de la demandante, única pose-
sión mediante la cual se puede adquirir el dominio por pres-
cripción.''

Pero el juez sentenciador estimó que la parte demandante
no había probado su personalidad, y, por tal motivo, deses-
timó la demanda.   Su opinión a este respecto, es como sigue:

''Se ha argüído por ambas partes muy laboriosamente respecto a la
cuestión de personalidad.   En el hecho primero de la demanda enmen-
dada se ha establecido por la demandante de una manera clara y ter-
minante, que ella es una asociación civil con fines benéficos y además
una fundación benéfica cuyos estatutos y reglamentos fueron aprobados
por R. O. de la Reina de España, de fecha 11 de noviembre de 1863.
Hay en las alegaciones de la demanda, después de haber sido enmen-
dada, cierta vaguedad en cuanto a la cuestión de capacidad, o mejor
dicho, de personalidad.   Siéntase por un lado que la demandante es una
asociación benéfica y por otro lado que dicha demandante es una fun-
dación, términos que parecen encerrar conceptos distintos; pero de
cualquier manera es evidente que según el antiguo derecho español, se
necesitaba en uno y en otro caso la aprobación del poder soberano.
La única evidencia suministrada por la demandante respecto al punto
que nos ocupa, se concretó a establecer cierto uso de funciones cor-
porativas que por otro lado son insuficientes para establecer la exis-
tencia de una corporación de facto.   Tampoco nos parece suficiente la
certificación del Hon. Secretario de Puerto Rico presentada por la
misma parte demandante, de la que resulta que la asociación conocida
por 'Asociación de Señoras Damas del Santo Asilo de la Villa de
Ponce' se registró en el libro de Asociaciones de acuerdo con el artículo
7 de la Ley de Asociaciones de 13 de junio de 1888.   Claramente, con
dicha certificación no puede probarse la existencia de la personalidad·
jurídica de la demandante el 17 de diciembre de 1873, que es la fecha
de la muerte del testador Don Juan Bautista Silva.   Dejando a un
lado la cuestión de que si la referida Ley de Asociaciones tiene o no
valor legal despues del cambio de soberanía en Puerto Rico, que han
planteado los demandados en su argumento, no aparece en la certifica-
ción aludida el acta de constitución ni la aprobación del Gobierno y es
por ello insuficiente.   Por estas razones la corte entiende y opina que
no se ha probado que la demandante haya tenido personalidad jurí-
dica y capacidad para adquirir bienes en la fecha de la muerte del

testador Don Juan Bautista Silva, ni que la tenga ahora para demandar ante las cortes de justicia y por ello declara sin lugar la demanda con imposición de las costas a la demandante."

Contra la sentencia dictada interpuso la presente apelación la parte demandante, habiendo comparecido solamente ante este Tribunal Supremo por medio de sus abogados la dicha parte demandante y la demandada Josefa Diana Martínez.

En su alegato la parte demandante sostiene "que la sola cuestión a debatir es la relativa a la personalidad jurídica de la demandante así para recibir un legado, como para demandarlo en juicio."

Y en su alegato la apelada Josefa Diana Martínez sostiene que: "La única cuestión a debatir en el presente caso, según lo declaró también la parte contraria en su alegato, es la relativa a la personalidad jurídica de la demandante, para entablar la acción reivindicatoria a que se contraen las alegaciones de su demanda."

Y así es en efecto. Este asunto vuelve por segunda vez a este Tribunal Supremo. En la opinión emitida por esta corte para fundar su sentencia de 24 de mayo de 1910, estudiamos las cuestiones debatidas en su fondo y sostuvimos que a virtud de los hechos alegados en la demanda, surgía el derecho de la demandante a la propiedad de los bienes que por ella trata de reivindicar. La prueba practicada sostiene las alegaciones de la demanda y demuestra que no sólo se dejó de cumplir estrictamente con lo dispuesto por el testador en cuanto al nombramiento de los llamados "herederos administradores," sí que también la demandada Josefa Diana Martínez, inscribió la posesión y trató de inscribir el dominio a su solo nombre de los más valiosos bienes de la herencia, omitiendo hacer referencia alguna al derecho de la asociación demandante, y que José Laboy inscribió a su nombre y vendió pequeñas porciones de terrenos que pertenecían a la herencia de Silva. Tales actos ejecutados por la demandada y por su esposo Laboy, unidos a todas las cir-

cunstancias de este caso, requieren que se cumpla la voluntad del testador y que se entreguen finalmente todos sus bienes a la asociación demandante para que los conserve en lo posible bajo buena administración e invierta sus productos líquidos en el socorro de los pobres enfermos asilados.

No existe indebida acumulación de parte demandadas, ni de acciones, de acuerdo con lo prescrito en el artículo 104 del Código de Enjuiciamiento Civil. El testamento de Silva es la única base en que descansa este litigio. Todo lo demás son derivaciones de ese documento principal y en un solo pleito y reuniendo a todos los interesados, deben resolverse definitiva y finalmente todas las cuestiones suscitadas.

No existe tampoco la prescripción alegada en cuanto a sus formas adquisitiva y extintiva. Es esto tan claro que no es necesario entrar en una amplia discusión y nos limitaremos a invocar como pertinentes las palabras del juez de distrito que dejamos transcritas.

De llegarse, pues, a la conclusión de que la demandante tuvo capacidad para heredar y la tiene para demandar, no hay duda alguna con respecto a su derecho a reivindicar los bienes de la herencia de Silva. De ahí la actitud asumida ante esta Corte Suprema por la demandante y por la demandada Josefa Diana Martínez, la principal interesada y la única que ha sostenido hasta el fin este litigio.

Examinemos la cuestión de personalidad.

Forma parte de la transcripción de los autos un pliego de excepciones en el cual, entre otras, se consigna la siguiente:

"La actora ofreció como evidencia para demostrar la existencia de la Real Orden de 11 de noviembre de 1863, autorizando la creación del Asilo de Damas de Ponce y la aprobación de su reglamento, el tomo 2º., página 201, de la obra 'Legislación Ultramarina' de Don Joaquín Rodríguez San Pedro, aprobada y autorizada por el Ministro de Ultramar. La corte reservó su resolución de momento y posteriormente resolvió no admitir dicha evidencia; la actora entonces manifestó lo siguiente: 'Hacemos otra moción: En

la creencia de que este libro sería admitido como prueba, por que generalmente lo es y se admite en los tribunales, en la creencia también de que la corte pudiera tener conocimiento judicial de ese Real Decreto, sin necesidad de prueba para ello y además, por el motivo de no encontrar en Ponce la Gaceta Oficial, no nos hemos ocupado de traer una certificación de ese decreto o la Gaceta original y solicitamos ahora de la corte, que nos conceda un término para ofrecer como prueba, bien una certificación de la Gaceta original o la Gaceta misma.' El demandado se opuso. La corte resolvió: La corte opina que no existiendo aquí sorpresa para la parte demandante, no hay motivo para una suspensión y desestima la petición. El demandado entonces tomó excepción.''

A nuestro juicio el tribunal sentenciador cometió error al no admitir como prueba para su mayor ilustración el libro ofrecido por la parte demandante, que ha sido citado como autoridad por la Corte Suprema de los Estados Unidos (*Jover v. Insular Government*, 221 U. S., 633), y por ésta de Puerto Rico.

Tenemos a la vista dicho libro que se titula ''Legislación Ultramarina, concordada y anotada por Don Joaquín Rodríguez San Pedro, etc., aprobada y autorizada por el Ministro de Ultramar, de conformidad con lo propuesto por la sección del ramo del Consejo de Estado.'' En el Tomo II, página 201, aparece lo siguiente:

''1863. Noviembre 11. R. O. autorizando el establecimiento de un Asilo de Caridad en Ponce y aprobando el Reglamento.

''Excmo. Sr. Se ha recibido en este Departamento la carta número 367 de 10 de septiembre último, en que V. E. da cuenta con copia de los antecedentes relativos al establecimiento de un Asilo de Caridad de Ponce, solicitado por Doña Enriqueta Vinsch de Prats y varias señoras de aquella villa; enterada S. M., y en vista de los informes favorables emitidos en el asunto, ha tenido a bien conceder la autorización referida, así como aprobar el Reglamento que acompaña. Al propio tiempo se ha servido disponer la Reina, manifieste a V. E. que ha visto con agrado esta prueba de los caritativos sentimientos del

vecindario de Ponce.  De R. O., etc.  Madrid, 11 de noviembre de 1863.  Sr. Gobernador Capitán General de la Isla de Puerto Rico.''

A continuación se copia en toda su extensión el Reglamento, que comprende 20 artículos.  En el primero se consigna que la asociación reconoce como principal objeto el alivio de la humanidad doliente y al efecto establecerá un asilo de caridad para los pobres del partido; en el segundo se dice que la sociedad reconoce como protector al Exmo. Sr. Gobernador Capitán General de Puerto Rico, y en el cuarto se establece que la asociación será regida por una junta directiva que administrará sus fondos y cuidará de su desarrollo y progreso.

El error cometido por la corte de distrito puede subsanarse por nosotros ahora, tomando como hemos tomado bajo nuestra consideración el expresado libro, publicado bajo la autoridad del Ministro de Ultramar, y en tal virtud debemos reconocer la existencia de la real aprobación del reglamento de la asociación demandante.

Se ha argüido que la Real Orden citada carece de fuerza en Puerto Rico, por no haberse demostrado que se le pusiera el ''cúmplase'' por el Gobernador, ni que se publicara en la Gaceta.

En cuanto al primer extremo, resulta implícitamente de las pruebas a que nos referiremos más adelante, que el Gobernador ordenó su cumplimiento, y en cuanto al segundo, como se trataba de una disposición de carácter privado, en cierto modo, no era absolutamente necesario que se publicara en la Gaceta.   (1 Rodríguez San Pedro, Legislación Ultramarina, 81, 82 y 83.)

Del libro de actas de la Asociación demandante, presentado como prueba a instancias de la propia demandada Josefa Diana Martínez, aparecen dos que copiadas, en lo pertinente, dicen así: ''1. En la Villa de Ponce, a los 27 días del mes de septiembre de 1863, reunidos en la casa del Sr. Cura Vicario Don José Balsino David, las señoras y señores que al margen se expresan y que son: Presidente, Sra. de Prats, (se consig-

nan los nombres de todos). En virtud de citación hecha a domicilio por medio del periódico de esta plaza a todos los que voluntariamente se han prestado a contribuir a la realización del pensamiento de erigir un asilo de caridad para los pobres del partido de que ha tiempo se ocupa la Asociación de Damas del Santo Asilo de esta Villa, la Sra. Presidenta Doña Enriqueta V. de Prats tomó la palabra y manifestó: que en virtud de acuerdo de la junta provisional directiva, se solicitó del Excelentísimo Sr. Gobernador y Capitán General de esta Isla el necesario superior permiso para la erección del Asilo, sometiendo al mismo tiempo a su aprobación el reglamento por que ha de regirse la asociación, y que habiéndose dignado S. E. en oficio de 9 del corriente, a que se dió lectura, conceder su autorización a lo primero y aprobar el reglamento, a reserva de lo que se digne disponer la Reina N. S. (Q. D. G.) a quien iba a dar cuenta, la junta provisional ha creído de su deber celebrar este acto con el fin de enterar a los contribuyentes del estado de adelanto que hoy alcanza el filantrópico pensamiento de que se ocupa, y de que toda vez que después de la autorización superior ha quedado definitiva y oficialmente constituída la Asociación de Señoras Damas del Santo Asilo, se proceda a la elección de la junta directiva, que sin el carácter provisional que ha tenido la que hoy cesa, se ponga a su frente y la rija con sujeción a sus estatutos. Admitida la proposición de la Sra. Prats y declara por unanimidad constituída oficialmente la 'Asociación de Señoras Damas del Santo Asilo de la Villa de Ponce' se procedió a elegir la nueva Junta Directiva   *   *   *.''

''2. En la Villa de Ponce a veinte y seis de enero de mil novecientos sesenta y cuatro, se reunió la Junta Directiva de la Asociación de Damas del Santo Asilo compuesta de los señores expresados al margen y acordó los particulares siguientes: Se dió cuenta con un oficio del Sr. Corregidor de ésta, transcribiendo otro del E. S. Capitán General en que inserta la Real Orden de 11 de noviembre último por la cual S. M. la Reina N. S. (q. d. g.) sé ha servido prestar su sobe-

rana autorización al establecimiento de esta Asociación de
Damas del Santo Asilo de la Villa de Ponce, aprobando al
mismo tiempo el reglamento por que ha de regirse y enterada
la junta, acordó se le diera publicidad por medio del periódico
y que se manifieste su júbilo a S. E. por el feliz resultado de
sus gestiones.  Dióse asimismo cuenta con una comunicación
de este corregimiento expresando haberse servido el Excmo.
Sr. Capitán General acceder a súplica que esta Asociación le
dirigiera por órgano de su presidenta, respecto a que le cediese
los mil ochocientos pesos que con la denominación de fondos
de hospital existen en los municipales y la junta llena de satis-
facción acordó se procediese a su cobro    *    *    *.''

Con tales elementos probatorios como base, es necesario
concluir que la Asociación demandante se organizó y comenzó
a funcionar de acuerdo con la ley desde 1863 y estaba capa-
citada para adquirir bienes por testamento a la muerte de
Silva, ocurrida en 1873.

Pasaron algunos años.  Se aprobó la Ley de Asociaciones
de 1888 y la demandante se registró de acuerdo con las pres-
cripciones de dicha ley.  Así consta de un certificado expedido
por el Secretario Auxiliar de Puerto Rico, que copiado a la
letra, dice así:

"Island of Porto Rico, City of San Juan.  Know all men by these
presents That I, Martin E. Gill, Assistant Secretary of Porto Rico, do
hereby certify: That the Association known as 'Asociación de Señoras
Damas del Santo Asilo de Damas de la Villa de Ponce,' of Ponce, P. R.,
is registered under No. 180 in the 2d volume of the register of asso-
ciations which is kept in this office, in compliance with requirements of
article 7 of the Law of Associations enacted June 13, 1888.  In testi-
mony whereof, I have hereunto suscribed my name at San Juan, Porto
Rico, this 4th day of November, 1904.  Martin E. Gill, Assistant Sec-
retary of Porto Rico.''

Cambió la soberanía y de hecho la Asociación demandante
continuó funcionando sin interrupción, cumpliendo con sus
mismos fines, y existe en la actualidad.  Su existencia en
cuanto se refiere a la herencia de Silva ha sido reconocida por

el mismo testador, por Juan Apolinario Laboy, por Dominga Fernández Verdez, por José Laboy y por la misma demandada Josefa Diana Martínez, en actos tan repetidos, que negarla sería ir contra la realidad evidente de los hechos.

No es posible negar con tales pruebas la capacidad de la demandante para adquirir la herencia de Silva al tiempo del fallecimiento de éste, y para demandar en la actualidad la entrega de los bienes que constituyen dicha herencia.

Habiendo en consideración todo lo expuesto y atendidas las razones consignadas en esta opinión y en la emitida para fundar nuestra anterior sentencia de 24 de mayo de 1910 (*Asociación de Señoras Damas etc.* v. *Diana et al.*, 16 D. P. R., 381), opinamos que debe revocarse la sentencia apelada y en su lugar dictarse otra declarando: 1°. Que los bienes reclamados procedentes de la herencia de Don Juan Bautista Silva corresponden a la asociación demandante, quien debe conservarlos en lo posible bajo buena administración e invertir sus productos líquidos en el socorro de sus enfermos pobres; 2°., que los demandados Josefa Diana Martínez, Juana Campos o Yordán, Julio Ribas y Santa Isabel Sugar Co. no tienen derecho alguno a aquellos de dichos bienes que poseen y deben devolverlos dentro del término de quince días a partir de esta sentencia, a la asociación demandante, y 3°., que son nulas las informaciones posesorias y sus inscripciones en el registro, a que se refiere la demanda.   La demandada Josefa Diana Martínez pagará sus propias costas y la mitad de las de la demandante.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, Wolf y Aldrey.